Our first case for today is Bilek v. Federal Insurance Company, and we should have Mr. Sawney and Mr. Wadley, which appears we do. And Mr. Pelzer. Oh, and Mr. Pelzer. There you are. All right. So, Mr. Sawney, I believe you're first. Good morning, Your Honors. Neil Sawney for the Plaintiff Appellate and Christopher Bilek. I'd like to reserve three minutes for rebuttal. Yeah, just keep an eye on your clock. Yes, Your Honor. Your Honors, this court has held time and again that the existence of an agency relationship is a highly fact-bound question that typically should be decided based on the evidence. A plaintiff ordinarily has no information about the alleged agent-principal relationship. Excuse me for interrupting, but I have to say that what you may have heard coming across my microphone was a phone call on my cell phone with the voter, the caller ID, scam likely. Well, that is no problem. I guess that is part and parcel of this case. Mr. Sawney, can I ask you a question here before you get going to the Army? Did the district court's order terminate the case as to the Doe defendants? Your Honor, yes, it did, because the district court entered in final judgment immediately after granting the HI's and federal's motions to dismiss. And so, I mean, it seems like the Doe defendants should still be in the case, but the district court entered in final judgment, and we appealed from that final judgment. And you agree that that final judgment covers the Doe defendants as well? Yes, Your Honor. So, returning back, to state a claim of vicarious liability at the pleading stage, a plaintiff must just allege sufficient facts that make their legal allegation of agency plausible. And Mr. Bialik has done so here on all three theories, but most clearly on actual authority. And that's where I'd like to start with, Your Honor's indulgence. And specifically, I'd like to point the court to three categories of specific allegations in the complaint, which you can find at paragraphs 28 to 29 in the complaint, and reproduced at JA 12 to 13. First, Mr. Bialik has alleged that federal and HII provided the telemarketers with scripts to use during their calls. Second, he alleges that the appellees expressly authorized the agents to use federal's trade names and to use their proprietary pricing and product information. And third, and most strikingly, he alleges that HII directly and actively participated in the calls by pairing telemarketers with real-time insurance quotes, by permitting the telemarketers to enter information directly into HII's computer systems, and by following up on certain calls by email, either during the call or after the call with insurance quotes. And these alle— And Mr. Sonny, can I just interject? The one step that I just want to make sure is nailed down, is your position that the complaint does adequately allege that HII or somebody, probably HII, went out and found the telemarketers on behalf of the principal? Yes, Your Honor, and at paragraphs 26 through 29, but I think first in 26 and then 28 and 29, Mr. Bialik alleges that the HII and federal created a business model to engage lead generators and telemarketers, and then I think it's in paragraph 29 that federal authorized HII to enter, you know, enter into an agreement with those telemarketers. Also, at the pleading stage, given that the inferences should be drawn in Mr. Bialik's favor, I think the allegations that HII was directly involved in the calls and allowed the telemarketers to enter information into HII's systems, fairly—the fair inference from that is that HII had a relationship with those telemarketers and knew about the calls that they were making. Okay. Why—I guess I'm curious, Mr. Sawney, why you think that those allegations are stronger with respect to actual authority than to apparent authority? Yes, Your Honor. Because you don't have—and we wouldn't expect a plaintiff in your position to have direct access to, for example, the contractual relationships between the telemarketers and the two named defendants here, but what you've got access to is behavior from which you're saying we should draw inferences. I'm just curious why you think actual authority is the way to go or the stronger way to go here. Sure, Your Honor. And I think those allegations—I mean, I think this is why agency can sometimes get muddled, but those allegations go to both implied actual authority and to apparent authority. And there's—sometimes, I think the restatement makes clear here that there's sometimes an overlap in how implied actual authority and apparent authority works. So those allegations are relevant to actual authority because actual authority turns only on the relationship between the principal and the agent. So here, federal and HII and the telemarketers. And Mr. Bilek's allegations as to HII and federal's conduct is taken in his favor, but they super plausibly suggest that the agents viewed themselves as agents of the principal, and they viewed that Mr.—sorry, federal and HII's actions manifested assent by the principal. So I think looking at the principal-agent relationship exclusively, taking Mr. Bilek out of the picture, those allegations are sufficient to demonstrate actual authority. Now, for apparent authority, I agree, Your Honor, that those allegations are sufficient to demonstrate that the—Mr. Bilek's reasonable belief that the telemarketer acted on behalf of federal and HII is traceable to the principals here, federal and HII. And— Could you just pause on that for a minute? Because I had some question in my mind. What was, in your view or in your allegations, that federal and or HII did? Because apparent authority requires some action or some signal or something on the part of the principal, and I would like to know what you think your best allegation is for that. Yes, Your Honor, and I have two responses. First, the allegation in paragraph 29 that federal and HII authorized the agents to use federal's trade name, Chubb, is what the restatement in section 203, comment C, says that a principal may make a manifestation by, quote, directing an agent to make statement to third parties or, quote, placing the agent in charge of transaction. And so that indirect signal satisfies the traceability requirement at the pleading stage. And, of course, Mr. Bilek would have to prove that if it went to the merits. But I think the second response goes to Judge Hamilton's question, which is precisely usually a consumer, if I get a robocall or Judge Hamilton's text message he just received, you have very little information aside from what the telemarketer or the message says. And here, Mr. Bilek was told by the agent only that the agent was selling products for Chubb, which is a trade name of a federal insurance company. And I checked. You did allege. I saw in your complaint that you draw the line between Chubb and federal because not everybody would know that. Yes, Your Honor. And first, I mean, federal insurance company is the largest in the Chubb family and the direct parent company to most insurance subsidiaries. So I think there's a plausible basis for alleging that it's Chubb. And second, federal has never really disputed that the telemarketer was selling the product, federal insurance company products. It could have said so in its brief. And if it got to summary judgment, it would be very easy for federal to get out of this case if it were not federal insurance products. It could just show that it was some other Chubb company. And so and third, Your Honor, I would point you on that issue to docket district court docket number thirty two one, which is an email from HII that contains an insurance enrollment form that lists both the Chubb trade name and federal insurance company in the letterhead. And so I think there's a kind of a plausible, if not a reasonable basis to believe that Chubb referred to federal. But but going back to your earlier question, Judge Wood, an ordinary consumer would have no information except for what the agent says on the call. And in this case, Mr. Bilek has alleged that the telemarketers used spoofed caller ID, so disguised caller ID, that the telemarketers did not identify themselves in violation of federal regulations. And so it's really hard to fault the plaintiff for not being able to allege more about the telemarketer when that's all that a consumer usually would have. And the FCC made that particularly clear in the Dish Network decision. They said that consumers usually will have no idea who's standing behind the telemarketer and the seller is in control of all that information. This is the unusual case where the plaintiff, Mr. Bilek, has alleged far more than just what he heard on the telephone call. He's alleged specific facts going to how H.I. and federal control the telemarketers, how they've authorized the telemarketers to act. And he's alleged specific knowledge on their part that the telemarketers are in fact using robocalls. And so those are at paragraphs 27, 30 and 31. He has alleged, as I mentioned, that H.I. is actually on these phone calls. And so any fair inference has to be that H.I. knew they were using robocalls. He's also alleged that the defendants have been have have received consumer complaints about these precise practices and consumer complaints have been shown to be sufficient for knowledge even at the merit stage. So, again, I think that would be sufficient to demonstrate knowledge at the pleading stage. So that's why I think this case is was it was particularly erroneous for the district court to dismiss it at the pleading stage because the allegations rise far above what is typically and kind of reasonably within the plaintiff's control. And the final point I want to make is that, of course, Mr. Bilek will have to prove these allegations at the summary judgment stage. And I think there's it's it's kind of telling that most of the cases that the defendants that cite in their brief get past the motion to dismiss it. And that's precisely because the information available to the plaintiff about agency relationships can really only be discovered. It can only be uncovered through discovery. Can I ask you, how does one distinguish between authorized telemarketing campaigns like this and, let's say, phishing campaigns that I assume we're all familiar with telling us that our Apple or Amazon accounts have been compromised? Yes, your honor. I mean, I think it would turn on kind of what the nature of the phishing campaign is. If it's if it would be unreasonable for a plain for kind of an ordinary person to view, let's say, the phishing email they receive as coming from an agent of Apple, if it's very obvious that it's kind of a malicious email. I think I'm specifically about phone calls here. OK, a phishing phone call. I have not received one, but I think that even in that case, even in that case, I try not to pick up my phone when I don't know the number. But even in that case, if the the person on the other side of the line says, for example, I'm selling products for Acme Company and it's a falsehood, I think that that is sufficient at the pleading stage to state a claim of agency. And of course, once you get to the summary judgment stage, it would be a very quick case because there would be no evidence tying that agent to the principal. I'm troubled by that answer. I've got to say, because I would think that that's why I think your allegations about the real time access, the proprietary information and the sheer scale of the campaign are important. I'd be troubled if I'm entitled to sue Amazon because I get one phone call that's unauthorized by Amazon telling me I should call them and call this number that's connected to somebody on the other side of the world to straighten out my account. That's not much of an indication. There's nothing directly from Amazon there. And there's nothing in industry customer practice that would tell me that this is something that Amazon is authorized. Yes, your honor. And I think that this court need not kind of get into that in this case, because precisely what you said, the allegations are far more than simply a representation on a call. And so this court can resolve either on actual authority or on apparent authority based on the allegations that Mr. Bilek has played about the defendant's control over the telemarketers. And it may not kind of address that marginal case. Sorry, your honor. No, could I ask you one other question? And that is, suppose we agree with you, remand discovery goes forward, and it turns you get access to the contracts among the defendants. And they all have a clause that says where the telemarketers are all say, we promise to obey the TCPA and to indemnify federal for any alleged violations. Would that be enough to get them off the hook? No, your honor. I think it would be strong evidence. And the TCPA cases that have reached summary judgment or bench trials, the contract provisions about illegality are like a significant piece of evaluating whether they should be held liable. But I think in like the Dish v. Krakauer case out of the Fourth Circuit, an exculpatory clause like that was not sufficient to overcome the other evidence. And so it's a factual question. The contract provision will be strong evidence one way or the other if it either permits or expressly prohibits. But I don't think it's dispositive. Okay, thank you. All right. You have very little time left, so I'm going to suggest you stop now, and we will come back to you. Thank you, your honor. All right. Mr. Pelzer? Good morning, your honor. May it please the court. My name is Jack Pelzer. I'm representing HII today. With me is Mr. Wadley, representing Federal. The question before the court is whether the plaintiff must plead actual facts to support its conclusions of agency. And off the bat, I have to challenge one of Bialik's assertions in the reply brief where Bialik repeatedly asserts that this court applies a lowered pleading standard for agency than for other facts. Well, I mean, that's surely not true, but the question is, does this complaint satisfy our now very well-worn Twombly-Iqbal standards, which both recognize that plaintiffs haven't had discovery yet. They're not all the way up at the Rule 9 level, but they are required to be plausible. Thank you, your honor. And turning to that aspect, the Twombly-Iqbal aspect, I have to challenge another allegation that, excuse me, that it's sufficient merely to allege that Federal and HII authorized these unnamed callers to use their names. So I have a question for you about that, because your position strikes me as potentially, at least, very odd. Because there you have Federal and you have HII, and it seems to me that your argument is that somehow these telemarketers parachuted in from nowhere, connected somehow with HII, connected to these live lines and inquiries for the sale of this insurance. And it seems to me that at least at the allegation stage, that's a very implausible theory, that they just took this upon themselves, you know, maybe trolling around the Internet or something. And the far more plausible theory is that there was, in fact, an arrangement between the telemarketers and HII and Federal. Well, this is where we have to distinguish between the broad conclusions that Mr. Bilek draws about the business relationship among the defendants and these unknown callers and what actually happened to Mr. Bilek. Well, no, wait a minute. Wait a minute. I'm not willing to give up on this, because that's why it was my first question also to Mr. Sani. We get as far as HII, which as I understand kind of has this platform, and then there are these callers, you know, the telemarketers, I'll call them for want of a better term. And the question is, is there enough alleged right now to show that there is a relationship, maybe that HII recruited them, HII gave them the scripts, HII gave them, you know, some criteria to show who's going to be called. We're not in the field of autodialers in this case, or we'd be talking about the Supreme Court today, but maybe that will come later. But there's an allegation that there's that link, and if that link is there, then we are looking at agency possibilities. Actually, Your Honor, that link is purely speculative in this case because there's no application. Why do you think there's no link? Because HII was never mentioned in this phone call to Mr. Bilek. Its name never came up and no email was sent. Why would the platform be mentioned when they're just trying to facilitate federal's sale of the insurance and passing along these concrete materials? Well, Bilek tries to draw that link by saying that HII sends emails directly to the colleagues, for want of a better term, during these kinds of calls. But unfortunately for Bilek, Mr. Bilek does not allege that he actually received one of these emails, and the district court points that out. So this suggestion that there is… Mr. Pulsar, excuse me, but both you and the district court seem unduly focused on Mr. Bilek's individual experience as opposed to the inferences that might be drawn from the campaign as a whole. If this were one call, I could see the point you're making. If it's thousands or tens of thousands, it's a little harder to deny him the benefit of such inferences. And I would say to that, Your Honor, that at this point it's speculation, complete speculation, to say that there were these thousands of calls. But it certainly is alleged that there were these calls, and it's alleged that the purpose was not merely to sell insurance, that it was really an advertising campaign. Facebook puts thousands of ads on its sites, not because it thinks a sale is going to be generated from each ad, but because it's buying exposure. And that, as I understand, is part of the theory of this case. As to that, Your Honor, all I can say is that there are no facts alleged to support the conclusion that that is what's going on here. What about paragraph 27, which says, defendants' lead generators had defendants express or at the very least implied actual authority to place the nonconsensual automated lead generation calls at issue. FIC contracted with HII to generate business, and HII in turn contracted with agents and lead market, et cetera, to effectuate that marketing. I mean, so it's marketing. It's not just a sale. I would suggest, Your Honor, that those words you just read are better characterized as conclusions than factual allegations. Those are conclusions that would be drawn from someone knowing something about federal and knowing something about HII. Instead, what we have here is no underlying basis to give rise to that inference, and therefore these are conclusions, not factual allegations, and therefore insufficient to support the allegations of agency. Can I ask more generally going on with the issue of the Twombly and Iqbal standard, Mr. Pelzer? In other contexts, some that come to mind are False Claims Act cases, for example, where there's a Rule 9 fraud standard that has to be satisfied with respect to claims about false billing practices. Some others that come to mind are product liability and preemption issues having to do with manufacturing problems. We've made time and again, we've said that you basically can't apply Twombly and Iqbal to require a plaintiff to plead facts that are clearly in the defendant's control. And, for example, if I recall correctly, either you or the district judge made the point here that plaintiffs don't allege how HII is compensated. I can't imagine how a plaintiff could be expected to do that. In these other areas of the law, we basically try to bring a pragmatic approach that says, what can you reasonably expect a plaintiff who is a victim of a violation of this statute or whatever the substantive law might be? What can we expect them to plead after the kind of diligence that you can have, you can pursue before you get discovered? I think for guidance on that, we looked at the three cases that Mr. Bailet did cite that were at the motion to dismiss stage where a complaint was found to be sufficient on these agency theories, three TCPA cases, very similar to this one. And in those cases, the plaintiff was able to allege the actual identity of the caller. It wasn't an unnamed person. They identified the caller and identified the relationship between the caller and the other defendants who provided the products. The callers did investigation, either by participating in the call, learning additional facts that provided a basis for these inferences, or they went to websites, company websites to gain information, or they went to regulatory filings to gain this information. That information is available. This case isn't remarkable for how difficult it is to plead. It's difficult for how little effort went into pleading it. And for that, that's the reason why the district court judge found it wanton. But to move on from that to accepting what I call conclusions as facts and treating those as facts, it still does not rise to a level of showing an actual or apparent agency or a ratification. You mean to say alleging, I'm sure. I mean, you don't have to show it at the pleading stage. Correct, Your Honor. Thank you. Mr. Pelzer, you mentioned that this case was not so difficult to plead. It was that the plaintiffs didn't do it here. Should we make anything of the district court's entry of final judgment before allowing the plaintiffs an opportunity to amend? Only, you know, I actually scoured the record looking for this, Your Honor, whether the plaintiff ever requested leave to amend at any point in time, and he never did. And so I think that's the reason why the district court didn't grant leave. He wasn't asked to. But getting back to the actual authority, this court clearly requires control of the manner and method of the agent's work in order to show or allege an actual agency. Are you sure of that? I mean, there certainly are cases that talk about that, but control does not have to be 100 percent. Many courts, both state courts and federal courts, turn for guidance to the restatement of agency, and that actually comes up in this case as well. The question, I think, is whether the particular thing at issue qualifies as a principal-agent relationship. But the indicia that we have here, the only two things that are pled are that a script was provided and that system access was provided. And both of those things have been found by other courts. We cited them in the briefs simply to be insufficient to show an agency relationship with one of these callers. Have other circuits held that insufficient? Yes, Your Honor. The Jones case in the Ninth Circuit expressly found that. But what do you do with Henderson, though, in the Ninth Circuit, which even on summary judgment reversed? Well, Your Honor, Henderson is not a case that I'm prepared to talk about because, frankly, it didn't pop up as being one of the critical cases in the briefs to me. Well, that's not the way I see it. Let me ask you about something else that does seem pretty critical, and that is the FCC guidance in the DISH Network rulings, which you do not discuss in your brief. Correct, Your Honor. As the District of Columbia Circuit pointed out, these rulings are not necessarily consistent with federal agency law and are not with the force of law and are— Now, the Supreme Court has cited that with apparent approval without really engaging with it. And as I read it, it looks like a pretty sensible middle ground position for the responsible agency. What's wrong with it? Well, Your Honor, the difficulty there is it really does bump up against Twombly and Iqbal, and it bumps up against the whole developed common law agency and creates a subarea of common law just for TCPA cases. Thank you. All right. Thank you very much, Mr. Pelzer. Mr. Wadley. Yes, good morning, Your Honors. Chris Wadley for Federal Insurance Company. Your Honors, I'd like to point out that in this case, federal is two steps removed from the actual call that violated the TCPA here. And if you look at the Twombly standard, it does require the pleading of facts that state a plausible cause of action. Rule 8 does say the pleader must state a claim that shows that he or she is entitled to relief. Right, but the Supreme Court, of course, has made it clear repeatedly that plausible does not mean more likely than not. Plausible means, as we've put it, a story that holds together. And if you're going to ask us to think that a principal can't use a first-level agent who then engages a second-level agent to do something, you've thrown an enormous amount of American business out the window. I'm not sure what's implausible about that business structure. There's nothing implausible about that business structure. But what Iqbal and Twombly tell us is that it's not sufficient to plead facts that are merely consistent with unlawful conduct or conduct that could give rise to responsibility or liability. You have to actually go beyond that and show that there is a right to relief or a plausible right to relief. How about this allegation? Go ahead. I was going to say the context in which that statement was made was in Twombly, actually, in the antitrust area, where a certain course of conduct was equally consistent with individual firm behavior versus conspiracy, concerted behavior. Whereas here, we don't have any problem at all like that. And the court did not mean by saying what you just quoted to require people to win their case at the pleading stage. The court understands that if there's a question of fact, the trier of fact may accept what goes on or may think that there really wasn't any serious link between your client and these telemarketers. But a question of fact doesn't mean that you fail on the more likely-than-not ground. Yes, Your Honor. But if you – I mean, this is also apparent in the Warsiak case where the court said – and certainly, there is an allegation of an arrangement here. The plaintiff pleads that Federal contracted with HII to generate business and HII contracted with telemarketers to market Chubbs Insurance products. But the mere fact that there's a contractual relationship alleged between sophisticated business entities – Right. What about the next sentence in paragraph 27? FIC knows that HII leads are generated through illegal telemarketing but inexplicably keeps accepting business derived through HII calls anyway. Okay. That – I mean, that, I suppose, potentially could go to a ratification argument, but there are a host of issues. Well, that's – well, go ahead. I don't want to argue. I was going to say there are a host of issues associated with that. But the point is, is that to plead agency – to plead an actual authority-agency relationship, it has to be more than just a contractual relationship. There has to be a right to control the manner and means in which the work is performed. And at least with respect to Federal here, twice removed from the actual calling, those allegations simply aren't present in the complaint. All right. Thank you very much, Mr. Wadley. Mr. Sawney, you were down, brushing the end of your time, but I'll give you – since we've given Mr. Wadley a little bit more, I'll give you two minutes to rebut. Thank you, Your Honor. And I'd just like to make three quick points. First, the affiliates say that we're asking for this court to lower the pleading standard, but we're just asking this court to apply the normal pleading standard. And I think that their position would create a heightened pleading standard for agency. The allegations, for example, that Federal intended this scheme to effectuate marketing on behalf of its insurance products is not a legal conclusion, despite claiming that it's a conclusion. That is a factual allegation. And at the pleading stage, under Iqbal and Twombly, that allegation should be credited and all inferences should be drawn in Mr. Bialik's favor. Second, I think it was notable that my colleague on the other side, when Judge Hamilton asked about kind of the best cases, he pointed to cases, some of which are at summary judgment. So the Jones case in the Ninth Circuit, that was a summary judgment case. And after the evidence was – after I think it was like 800 pages of discovery, after depositions of the corporate executives, the court held – found that there was no agency relationship based on the evidence and granted summary judgment to the defendant. So Jones itself had allegations that were sufficient to proceed over a Rule 12b-6 motion. And that's true with all the – the majority of the cases cited in the briefs. I would point this court to this own court's decision in United States v. Dish Network from last year, which came after a bench trial. And this court noted the fact that the agents in that case, there was evidence that they entered information into Dish's own systems. That was sufficient evidence of control along with the contract on the merit stage of an agency relationship. And so allegations to that effect here should be plausible to state that agency relationship. And third, I just think the logic of HI's and federal's position here is that a seller who totally controls a telemarketer could direct the telemarketer to just not mention any names, and then they would get out of liability. And that can't be kind of reconciled with the TCPA and Congress's purpose. So I would urge this court to reverse the judgment law. All right, thank you very much. Thanks to all counsel. The court will take the case under advisement.